BROADHEAD *v.* MONAGHAN, CHAIRMAN STATE TAX COMMISSION, ETC.

No. 41225 February 15, 1960 117 So. 2d 881

240

*deQuincy V. Sutton,* Meridian, for appellant.

*John E. Stone,* Jackson, for appellee.

KYLE, J.

This case is before us on appeal by Sam E. Broadhead, complainant in the court below, from a decree of the Chancery Court of the First Judicial District of Hinds County, dismissing his bill of complaint against

Noel Monaghan, Chairman of the State Tax Commission and Ex Officio Commissioner of State Income Tax, seeking a mandatory injunction in the form of an order to require the acceptance by the commissioner of the complainant's tender of payment of state income tax without penalty for the calendar year 1956.

The complainant alleged in his bill that he had filed his state income tax return for the calendar year 1956, pursuant to the requirements of the statute, and had elected to pay the tax shown to be due in four installments; that the first three installments were duly paid within the time allowed by the statute; but the fourth installment, which became due and payable on or before the 15th day of December 1957, was not paid when due; that notice of the delinquency was sent to the complainant by the commissioner, although no such notice was required by the statute; that the tax was not paid within sixty days after its due date; and that the commissioner on February 17, 1958, notified the complainant that a penalty of ten per cent had been imposed on account of the delinquency. The complainant further alleged that the commissioner on March 7, 1958, addressed another letter to the complainant advising him that a penalty of 25 per cent of the amount of the tax due had been imposed, together with 12 per cent interest, making a total sum of $5,226.95, for which payment was demanded; and that the commissioner on March 11, 1958, advised the complainant by letter that a warrant for the collection of the tax would be issued on March 17, 1958; that the complainant, upon receipt of the letter, tendered to the commissioner a check for the sum of $3,888.29 in payment of the delinquent installment of tax, along with a check for the sum of $58.32 as interest, on the installment for the period of delinquency; and that the commissioner, promptly rejected the tendered checks and returned them to the complainant, and demanded that the complainant remit the sum of $5,226.95 in settlement of the

tax, interest and penalty referred to in his letter of March 7, 1958. Copies of the letters mentioned above were attached as exhibits to the bill of complaint.

The complainant further alleged in his bill that the provisions of the statute (Section 9220-24, Mississippi Code of 1942, Recompiled) under which the commissioner had undertaken to impose the 25 per cent penalty were invalid in that they represented an unconstitutional delegation of legislative power to the commissioner to impose penalties in amounts which might vary from taxpayer to taxpayer. The complainant also denied the right of the commissioner to delegate to the chief of the Income Tax Division the power of imposing penalties under the statute. The complainant tendered in his bill of complaint the checks previously tendered to the commissioner for the sums of $3,888.29 and $58.32, in settlement of the tax liability and interest accrued to March 15, 1958; and the complainant prayed that a decree be entered requiring the defendant to accept the tendered checks in full settlement of said liability, and that the claim for the alleged penalty be suppressed and declared void. The complainant also prayed for general relief.

The complainant later amended his bill, so as to allege, that the attempted delegation by the Legislature to the commissioner of authority to impose the penalty was repugnant to the provisions of Section 33 of the State Constitution and the Fourteenth Amendment of the Constitution of the United States, in that it represented a denial to the complainant of the equal protection of the laws.

The defendant in his answer admitted the facts alleged in the bill concerning the complainant's failure to pay the fourth installment of his 1956 income tax, the imposition of the 25 per cent penalty because of such default, and the demand for the payment of the tax, interest and penalty as alleged in the complainant's bill. The defendant denied that the discretionary power to impose

penalties for delinquencies in the payment of taxes, vested in the commissioner under Section 9220-24, Code of 1942, Recompiled, was subject to judicial review in the absence of abuse, which was not present in this case. The defendant denied that Code Section 9220-24, represented an unconstitutional delegation to the commissioner of the right to impose or withhold penalties; and the defendant denied that the penalty imposed on the complainant was unlawful. The defendant denied that the statute authorizing him to impose penalties violated Section 33 of the State Constitution or the Fourteenth Amendment of the Constitution of the United States; and the defendant denied that the action taken whereby the penalty of ten per cent was later increased to 25 per cent was arbitrary or capricious. The defendant denied that the complainant was entitled to any relief whatever.

Only two witnesses testified during the hearing before the chancellor.

The appellant, Noel Monaghan, Chairman of the State Tax Commission, testified that he had delegated authority in writing to H. N. Eason, as Chief of the Income Tax Division, to impose penalties and issue warrants and to do all things necessary to be done to carry out the duties of his office as Chief of the Income Tax Division. The appellant identified and offered in evidence the power of attorney which he had executed on November 1, 1956, appointing H. N. Eason as Chief of the Income Tax Division; and the appellant stated that Eason had acted under that power of attorney since that date. Eason had discussed with him practically all of the delinquencies which had resulted in the imposition of penalties since that time, including the penalty imposed in this case; but the appellant did not remember that he had specifically directed the imposition of the penalty.

Henry N. Eason, Chief of the Income Tax Division, testified that the fourth installment of the complainant's tax for 1956 became delinquent from and after December

15, 1957. A notice reminded the taxpayer of his delinquency was mailed to him on January 8, 1958, and on February 7, 1958, another notice was mailed to him advising him that, when the tax became sixty days delinquent, the minimum penalty of 10 per cent and interest in addition to the installment would be exacted. The tax still remained unpaid and on February 17, 1958, a 10 per cent penalty and interest were assessed, and the complainant was duly notified. The delinquency continued, and on March 7, 1958, the 25 per cent penalty was assessed, together with interest, and notice thereof was given to the complainant, as alleged in the bill of complaint. Eason stated that similar notices were sent to all other delinquent taxpayers who had failed to pay the December 15, 1957, installments of their income taxes, and that similar penalties were imposed on all other taxpayers who had failed to pay the amounts due on or before February 17, and March 7, 1958, respectively.

At the conclusion of the testimony the chancellor held that there was nothing in the statute under which the penalties complained of were imposed which was repugnant to the provisions of Section 33 of the State Constitution or the provisions of the Constitution of the United States and particularly the Fourteenth Amendment thereof; that the statute was constitutional and valid; that the commissioner had the power to delegate to the Chief of the Income Tax Division authority to impose the penalties; and that the complainant was not entitled to the relief prayed for in his bill of complaint. A decree was therefore entered dismissing the bill of complaint.

The appellant assigns and argues six points as ground for reversal of the decree of the lower court:

(1) That the assessment of the penalty provided for in Section 9220-24, Code of 1942, Recompiled, was void because of the commissioner's failure to issue a distraint warrant for the collection of the tax as required by Code Section 9220-27, prior to the assessment of the penalty.

(2) That the assessment of the penalty by the commissioner under authority of Section 9220-24 was invalid for the reason that no provision is made in the statute for a hearing upon the question of the taxpayer's liability for the penalty or for a review of the action of the commissioner in imposing the penalty.

(3) That the provisions of the statute (Code Section 9220-24, supra,) authorizing the commission in his discretion to impose a penalty of not less than ten per cent and not more than 25 per cent, in case of default in the payment of any installment, are invalid in that they represent an unconstitutional attempt on the part of the Legislature to delegate to an executive officer a power of government that is peculiarly legislative.

(4) That the assessment of the penalty in this case by the Chief of the Income Tax Division was void for the reason that the penalty was assessed in the exercise of a discretionary power vested in the commissioner, which the commissioner was not authorized to redelegate to his deputy or assistant.

(5) That the assessment of the penalty in this case was invalid for the reason that the assessment was based upon an arbitrary classification of the delinquent taxpayers made by the Chief of the Income Tax Division whereby taxpayers whose payments were sixty days delinquent were penalized ten per cent, and other taxpayers who failed to pay the ten per cent penalty were penalized at the maximum rate of 25 per cent.

(6) That, even if the penalty was validly imposed, the demand for interest at the rate of 12 per cent for three months of delinquency was not authorized by the statute, and the incorporation of a demand for such excessive rate of interest in the demand for payment of the tax rendered the entire assessment void.

██ █ We think there is no merit in the appellant's contention that the assessment of the penalty was invalid because of the failure of the commissioner to issue a war-

rant for the collection of the tax as provided for in Code Section 9220-27, supra, as amended by Chapter 390, Laws of 1954, before undertaking to impose the penalty. The statute does not require that the commissioner issue a warrant for the collection of the tax, as provided in Section 9220-27, prior to the imposition of the penalty.

Neither do we think that the assessment of the penalty provided for in Code Section 9220-24, was invalid because of the failure of the statute to provide for a hearing upon the question of the taxpayer's liability for the penalty or for a review of the action of the commissioner in imposing the penalty.

In construing a statute the court must seek to ascertain the legislative intent from the statute as a whole, and not from a segregated portion, considered apart from the rest of the statute. Each provision or section of the statute must be considered with respect to, or in the light of, all the other provisions or sections 82 C. J. S., 694, Statutes, par. 345, and cases cited. See also Roseberry v. Norsworthy, Sheriff and Tax Collector (1924), 135 Miss. 845, 100 So. 514; Alexander v. Graves, 178 Miss. 583, 173 So. 417; Mississippi Cottonseed Products Co. v. Stone (1939), 184 Miss. 409, 184 So. 428; Anderson Brothers v. Stone, 227 Miss. 26, 85 So. 2d 767; Scott Building Supply Corporation and American Employer's Insurance Co. v. Mississippi State Tax Commission (1959), 235 Miss. 22, 108 So. 2d 557.

Section 9220-24, Code of 1942, Recompiled, was enacted as Section 23 of Chapter 402, Laws of 1952, known as the ''Income Tax Act of 1952.'' Section 29 of said Chapter 402, which appears as Section 9220-30, Code of 1942, Recompiled, provides that a taxpayer may apply to the commissioner for a revision of the tax assessed against him at any time within three years from the time of the filing of the return or from the date of the notice of the assessment of any additional tax, and the commissioner shall grant a hearing thereon and, if upon

such hearing he shall determine that the tax is excessive or incorrect, he shall resettle the same according to the law and the facts, and adjust the computation of the tax accordingly. The next succeeding section provides that, if the taxpayer is aggrieved by the decision of the commissioner, he may appeal to the State Tax Commission; and if still dissatisfied after the decision of the commission, he may file a petition in the Chancery Court of Hinds County for a hearing of the case on its merits. Section 4(a) of said Chapter 402, Laws of 1952, which appears as Section 9220-04, Code of 1942, Recompiled, as amended by Chapter 389, Laws of 1954, provides that the tax imposed under the act and "all increases, interest and penalties provided for * * * shall be recoverable as a part of the tax with respect to which they are imposed."

It thus appears that, by the terms of the statute itself, the interest and penalties imposed under the statute are to be treated as a part of the tax-recoverable; and if the taxpayer feels aggrieved on account of the imposition of such interest and penalties, he may apply to the commissioner for a revision of the interest and penalties, as provided for in Section 29, of said Chapter 402 (Code Section 9220-30), supra; and if, after a hearing before the commissioner, he is dissatisfied with the decision of the commissioner he may appeal to the State Tax Commissioner, and if still dissatisfied after the decision of the commission, he may then file a petition in the chancery court for a hearing of the case on its merits. We therefore hold that the appellant's contention that the assessment of the penalty by the commissioner was invalid for the reason that no provision was made in the statute for a hearing upon the question of the apellant's liability for the penalty before such liability became final is not well-taken.

The most serious question presented for our decision on this appeal arises under the third assignment of er-

ror as shown above, in which the appellant challenges the constitutionality of that part of Code Section 9220-24, supra, which provides that the commissioner may in his discretion impose a penalty of not less than 10 per cent and not more than 25 per cent for delinquency in the payment of any installment of the tax. The provision of the statute referred to reads as follows:

"If the entire amount of the tax unpaid is not paid to the commissioner within sixty (60) days after default in the payment of any such installment, the commissioner may, in his discretion, impose for such delinquency a penalty of not less than ten per centum (10%) and not more than twenty-five per centum (25%) of the delinquent sum."

It is argued that the above mentioned provision of the statute is invalid for the reason that it represents an unconstitutional attempt on the part of the Legislature to delegate to an executive officer a power of government that is peculiarly legislative; that the power to determine the amount of a penalty to be imposed for noncompliance with a requirement of law is a legislative function; and that the attempt to delegate that power to the chairman of the State Tax Commission, as provided in Code Section 9220-24, supra, is nothing less than an attempt to vest in the commissioner lawmaking power in violation of Section 33 of the State Constitution and the due process clauses of the State and Federal constitutions. The appellant does not contend that the Legislature had no authority to impose penalties for delinquency in the payment of installments of the income tax. But the appellant contends that the penalty clause of the statute is invalid for the reason that it imposes no penalty directly but attempts to vest in the commissioner power to impose such penalty in such amount, within broad limits, as he may see fit to impose, or to refrain from imposing a penalty in any amount, if he sees fit to do so, with no legislative standard prescribed

for fixing the amount of the penalty to be imposed and no definition of the conditions which the commissioner must find to exist before imposing such penalty.

It can be readily seen that the constitutional question thus presented goes to the heart of the penalty clause of the above mentioned code section.

██ It is well-settled by the decisions of this Court that a constitutional question will not be passed on where the issues involved in the particular case are such that the case may be decided on other grounds. Meek v. Humphreys County, 133 Miss. 386, 97 So. 574; Miller v. Sherrard, 157 Miss. 124, 126 So. 903. ██ But whenever a constitutional question is presented and the issues involved in the case cannot be decided on other grounds, or where the right of a party is founded solely on a statute, the validity of which is attacked, as in the case that we have here, the Court cannot decline to pass on the constitutional question. 16 C. J. S. 320, Constitutional Law, par. 94. ██ It is also well-settled by our own decisions that an act of the Legislature will not be declared unconstitutional unless in plain violation of some provision of the State or Federal constitution; ██ and that every doubt should be resolved in favor of the constitutionality of legislative acts. Hart v. State, 87 Miss. 171, 39 So. 523, 122 Am. St. Rep. 437; State ex rel. Attorney General v. County School Board of Quitman County, 181 Miss. 818, 181 So. 313; Russell Inv. Corporation v. Russell, 182 Miss. 385, 178 So. 815, 182 So. 102; Standard Oil Co. v. Stone, 191 Miss. 897, 1 So. 2d 155; Burge v. Board of Supervisors of Pearl River County, 213 Miss. 752, 57 So. 2d 718; State Ex rel. Patterson v. Board of Supervisors of Prentiss County, 234 Miss. 26, 105 So. 2d 154. But, as stated by the textwriter in 11 Am. Jur. 714, Constitutional Law, par. 88, ''In accordance with principles which are basic, the rule is fixed that the duty in a proper case to declare a law unconstitutional cannot be declined and must be performed in

accordance with the deliberate judgment of the tribunal before which the validity of the enactment is directly drawn into question.'' See also Orick v. State, 140 Miss. 184, 105 So. 465, and cases cited.

After a careful study of the reported cases, both state and federal, we have concluded that the penalty clause of Code Section 9220-24, supra, is invalid under the state and federal constitutions, and that we must so hold in this case.

■■ It has been generally held that the determination of the amount of a penalty to be imposed for non-compliance with the requirements of law is a legislative function, which may not be delegated to an administrative officer or agency, with power, in his discretion, to impose such penalties, within broad limits, as he may see fit to impose. ■■ The Legislature, in the enactment of a revenue law, may provide for the imposition of penalties for delinquencies in the payment of the tax; and the Legislature may fix the amount of such penalty at a fixed percentage of the amount of the delinquent tax. ■■ The Legislature may confer upon an administrative officer power to enforce such penalties. But the Legislature has not been given the power, under the Constitution, to delegate to such administrative officer an uncontrolled discretionary power to determine, within broad limits, the amount of the penalty to be imposed in each case.

■■ The power of taxation is an incident of sovereignty inherent in the state, because government cannot exist or function without it. The continuance of regular and uniform receipt of the public revenue is essential to a proper discharge of state governmental functions, and to induce prompt payment of taxes the Legislature of the several states have very generally imposed penalties on taxpayers who fail to pay their taxes within a specified period. Congress has adopted a similar policy to enforce payment of federal income taxes. See 30 Am. Jur. 371,

Internal Revenue, par. 360, I.R.C., 1954, Title 26, par. 6653; U. S. C. A. 1954, Title 26, par. 6653. The imposition of penalties for failure to pay taxes upon the day fixed by law is nothing new in this state; and statutes imposing such penalties have been repeatedly upheld by this Court. Texas Company v. Dyer, 179 Miss. 135, 174 So. 80, and cases cited. "There can be no doubt of the right to impose penalties for neglect or refusal to perform duty under tax laws where the law providing therefor gives full opportunity for a hearing." Cooley on Taxation, First Edition, Vol. 3, par. 1273.

██ ██ Penalties are graduated in severity according to the evils which the lawmaker wishes to prevent and the exigencies with which the penalty imposing statute deals; and it has been repeatedly held that the amount of the penalty to be imposed for failure to pay taxes when due is a matter for the Legislature to determine in its discretion. Western Union Telegraph Co. v. State of Indiana, 165 U. S. 304, 310, 17 S. Ct. 345, 41 L. Ed. 725; Bankers Trust Co. v. Blodgett, 260 U. S. 647, 651, 43 S. Ct. 233, 67 L. Ed. 439; Isbell v. Gulf Union Oil Co., 147 Tex. 6, 209 S. W. 2d 762; Chicago R. I. & P. Ry Co. v. People, 217 Ill. 164, 75 N. E. 368, 371; Tite v. State Tax Commission (1936), 89 Utah 404, 57 P. 2d 734; Gooch v. Rogers, 193 Or. 158, 238 P. 2d 274; State v. Great Atlantic & Pacific Tea Co., 190 La. 925, 183 So. 219; State v. State Board of Equalization (Montana, 1958), 319 P. 2d 1061; Cooley on Taxation, Fourth Edition, Vol. 3, par. 1273, p. 2535; 51 Am. Jur., p. 848, Taxation, par 970; 85 C. J. S. 851, Taxation, par. 1023; Bennett v. Jones, 107 Miss. 880, 66 So. 277, Hamel v. Marlow, Sheriff & Tax Collector, 171 Miss. 559, 157 So. 255, 905; Brittain & Henry v. Robertson, State Revenue Agent, 120 Miss. 684, 83 So. 4; Texas Co. v. Dyer, 179 Miss. 135, 174 So. 80. It is only when the penalty is plainly oppressive and disproportionate to the offense for which it is inflicted that the statute imposing the penalty will

be declared unconstitutional on the ground that the penalty is excessive. Western Union Telegraph Co. v. State of Indiana, 165 U. S. 304, 310, 17 S. Ct. 345, 41 L. Ed. 725; Exparte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714; Missouri Pacific Ry. Co. v. Tucker, 230 U. S. 340, 33 S. Ct. 961, 57 L. Ed 1507; Chicago & N. W. Ry. Co. v. Nye-Schneider-Fowler Co. 260 U. S. 35, 43 S. Ct. 55, 67 L. Ed. 115; Chicago R. I. & P. Ry. Co. v. People, 217 Ill. 164, 75 N. E. 368, 371; Gooch v. Rogers, supra; State v. Great Atlantic & Pacific Tea Co., supra; State v. State Board of Equalization (Montana 1958) supra; Texas Company v. Dyer, supra.

In Western Union Telegraph Company v. State of Indiana, supra, the Supreme Court held valid an Indiana statute which provided that, on the failure of a telegraph company to pay any taxes assessed against it, when due, in addition to other remedies provided by law for the collection of the taxes a suit might be prosecuted in the name of the state to enforce payment, and that the judgment received in such action should include a penalty of 50 per cent of the amount of the taxes so assessed and unpaid. In its opinion in that case the Court said: "The amount of the penalty was a matter for the Legislature to determine in its discretion." In Bankers' Trust Company v. Blodgett, supra, the Supreme Court sustained as valid a Connecticut statute, Gen. St. 1918, Section 1190, which provied for a penalty of 2 per cent per annum for five years on the appraised value of any part of a decedent's property on which the decedent had omitted to pay a tax in the year preceding his death. In State v. State Board of Equalization, supra, the Montana Court held that a section of the state income tax law which provided that, if any person should fail voluntarily to make return of his income or pay the tax found to be due within 60 days of the time required, the tax should be doubled, was civil or remedial in nature, not criminal, and did not violate the provisions of the State

Constitution prohibiting imposition of excessive fines. In Isbell v. Gulf Oil Co., supra, the Texas Court sustained the validity of a section of the State Franchise Tax Law imposing a penalty of 25 per cent of the amount of the franchise tax due for failure to pay such franchise tax promptly.

In Bennett v. Jones, supra, and in Brittian & Henry v. Robertson, supra, this Court upheld the validity of Section 3901, Code of 1906, which provided that all persons or corporations liable for a privilege tax, who should fail to pay the tax during the month in which it was due, should be liable for double the amount of the tax. In Texas Company v. Dyer, supra, this Court upheld the validity of a 25 per cent penalty imposed on distributors and wholesale dealers of gasoline for failure to pay promptly, on or before the 15th day of the month, the excise tax on gasoline purchased, acquired or stored by the distributor or wholesale dealer during the preceding month. The Court in its opinion in that case said: ''The penalty here imposed is not excessive when considered in connection with the purpose of government; the necessity for money to run it, and the desirability of having taxes promptly paid when due.''

██ ██ It is also well-settled that the Legislature may delegate to an administrative officer or agency power to enforce penalties prescribed by the Legislature for delinquencies in the payment of taxes without resort to the courts. ██ ██ Due process does not require that the courts, rather than administrative officers, be charged, in any case, with determining the facts upon which the imposition of such a penalty depends. Bartlett v. Kane, 16 How. 263, 14 L. Ed. 131; Passavant v. United States, 148 U. S. 214, 13 S. Ct. 572, 37 L. Ed. 426; Oceanic Steam Navigation Co. v. Stranahan, 214 U. S. 320, 29 S. Ct. 671, 53 L. Ed. 1013; Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, Collector of Customs, 287 U. S. 329, 77 L. Ed 341, 53 S. Ct. 167; Tite v. State Tax Commission,

supra; Gooch v. Rogers, supra; State v. State Board of Equalization, supra; Texas Co. v. Dyer, supra; Helvering v. Mitchell, 303 U. S. 391, 58 S. Ct. 630, 82 L. Ed. 917.

In the early case of Bartlett v. Kane, 16 How. 263, the Supreme Court of the United States upheld the validity of an assessment by the collector of the Port of Baltimore of an additional duty of 20 per cent against an importer of Peruvian bark, imposed under authority of the 8th section of the Tariff Act of 1846 (9 Sta. at Large 43) as a penalty for undervaluation of the imported merchandise; and in referring to the power of Congress to confide to administrative officers the enforcement of tariff legislation, the Court said: ''The interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief; and we are satisfied that such a power was never intended to be given to them. Decatur v. Paulding, 14 Pet. 499.'' In Passavant v. United States, 148 U. S. 214, the Court reaffirmed the power of Congress to delegate to administrative officers final and conclusive authority as to the valuation of imported merchandise, together with authority to impose penalties for undervaluation.

In Oceanic Steam Navigation Company v. Stranahan (1909), 214 U. S. 320, 29 S. Ct. 671, 53 L. Ed. 1013, the Court held that it was within the competency of Congress, when legislating as to matters exclusively within its control, to impose appropriate obligations and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power; and that the imposition of a penalty by an executive officer when authorized by Congress in a matter wholly within its competency, such as alien immigration, was not unconstitutional under the Fifth Amendment as taking property without due process of law. In its opinion in that case the Court said:

"In Passavant v. United States, 148 U. S. 214, the authority of Congress to delegate to administrative officers final and conclusive authority as to the valuation of imported merchandise, accompanied with the power to impose a penalty for undervaluation, was reiterated, and the doctrine of Bartlett v. Kane (U. S. 16 How. 263) was applied. And the same principle was upheld in Origet v. Hedden, 155 U. S. 228.

"In accord with this settled judicial construction the legislation of Congress from the beginning, not only as to tariff but as to internal revenue, taxation and other subjects, has proceeded on the conception that it was within the competency of Congress, when legislating as to matters exclusively within its control, to impose appropriate obligations and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power."

In Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, Collector of Customs (1932), 287 U. S. 329, 53 S. Ct. 167, 77 L. Ed. 341, the Court had under consideration Section 9 of the Immigration Act of 1917, as amended, which conferred upon the Secretary of Labor, as an administrative officer, authority to impose money penalties upon persons of transportation companies bringing to the United States aliens afflicted with any of the diseases therein enumerated; and the Court held that the statute represented a valid exercise of the power of Congress to control the admission of aliens, and in as much as the fines prescribed were not unreasonable or confiscatory in amount their imposition by administrative action, rather than by judicial procedure, did not deny due process. In its opinion in that case the Court said:

"As was pointed out in the Stranahan case (supra), the statute imposing the fines must be regard-

ed as an incident to the exercise by Congress of its plenary power to control the admission of aliens, and due process of law does not require that the courts, rather than administrative officers, be charged, in any case, with determining the facts upon which the imposition of such a fine depends. It follows that as the fines are not invalid, however imposed, because unreasonable or confiscatory in amount, which is conceded, Congress may choose the administrative rather than the judicial method of imposing them. Indeed, the Court rested its decision in Oceanic Navigation Co. v. Stranahan, supra, on the authority of cases arising under the revenue laws, authorizing the administrative imposition of civil penalties frequently much greater than those imposed here. Bartlett v. Kane, 16 How. 263, 274; Passavant v. United States, supra, (148 U. S. 214, 13 S. Ct. 572, 37 L. Ed. 426); Origet v. Hedden, 155 U. S. 228, (15 S. Ct. 92, 39 L. Ed 130). See Murray's Lessee v. Hoboken Land & Impt. Co., 18 How. 272.''

In Helvering, Commissioner of Internal Revenue, v. Mitchell, 303 U. S. 391, 58 S. Ct. 360, 82 L. Ed. 917, the Court held that a prior judgment of acquittal on a criminal charge of fraudulently attempting to defeat and evade the payment of income tax was not a bar to the assessment by the Commissioner of Internal Revenue of the additional tax found to be due, or the assessment of the penalty of 50 per cent of the total amount of the deficiency (in addition to the deficiency), as provided in the Revenue Act of 1928, C. 852, Sec. 293 (b), 45 Stat. 791, for fraud with intent to evade the tax.

 ██ It has been generally held, however, that the power to prescribe penalties to be incurred for breaches of public duty appertains to the legislative department, to be exercised by the enactment of laws; and that the determination of the amount of the penalty to be imposed

for noncompliance with the requirement of law is a legislative function, which may not be delegated to an administrative officer or agency, with unrestricted power, in his discretion, to impose such penalties, within broad limits, as he may see fit to impose. ■■ ■ As stated by the textwriter in 73 C. J. S., 323, Public Administrative Bodies and Procedure, par 29, "The law-making power may not be granted to an administrative body to be exercised under the guise of administrative discretion." ■■ ■ Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto.

In the very recent case of State v. Allstate Insurance Company (1957), 231 Miss. 869, 97 So. 2d 372, this Court said:

"The traditional theory is that the legislature cannot delegate power to make law, but may delegate power to determine facts on which the law makes its own action depend. Clark v. State, 1934, 169 Miss. 369, 152 So. 820; Abbott v. State, 1913, 106 Miss. 340, 63 So. 667. Legislative power or functions may be delegated to an administrative agency only in the limited sense that the statute must set forth the legislative decision and must prescribe adequate standards or rules for the agency's guidance. It cannot be vested with an arbitrary and uncontrolled discretion."

■■ ■ While the Legislature, in the enactment of revenue laws, may provide for the imposition of penalties for delinquencies, in order to hasten payment of taxes, or for frauds, evasions or neglect of duty under the revenue laws, and confer authority upon an administrative officer to impose such penalties, stating the conditions under which such penalties may be imposed, it

has not been given the power, under the Constitution, to surrender its own discretion to such administrative officer or agency in the matter of determining the amounts of such penalties. United States v. Grimaud (1911), 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969, 32 L. R. A. (N. S.) 639, 660; Cigar Makers' International Union v. Goldberg, 72 N. J. L. 214, 61 A. 457, 111 Am. St. Rep. 662, 70 L. R. A. 156; Tite v. State Tax Commission, 89 Utah 404, 57 P. 2d 734; Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, Collector of Customs, supra; State v. Oliver Iron Min. C. (1939), 207 Minn. 630, 292 N. W. 407; L. P. Steuart & Bro. v. Bowles, 140 F. 2d 703, 78 U. S. App. D. C. 350; Commonwealth v. Diaz (1950), 326 Mass. 525, 95 N. E. 2d 666. See also Cooley on Constitutional Limitations, 8th Ed. Vol 1. p. 224.

In discussing the power of the Legislature to provide penalties and to vest in administrative officers authority to inflict such penalties, the textwriter in 16A C. J. S., 899, Constitutional Law, par. 640, says:

"*Penalties and Forfeitures*

"* * *

"While the power to provide penalties rests in the legislative branch of the government, and cannot be delegated, the power to inflict the penalties does not belong to the legislature but to the judiciary, which cannot inflict them without first affording an opportunity to be heard in court, although in some instances where the act punishable is not a crime it has been vested in administrative officers without resulting in denial of due process. * * *

"Penalties may be used to assist in executing license and revenue laws, and in general to enforce police regulations. * * * A statutory provision for a reasonable and measured recovery, as a civil pen-

alty, for violation of a statute involving the public interest is not violative of the due process clause.

*"Amount and determination thereof.* Due process of law with respect to the imposition of penalties requires that the legislature shall prescribe the amount of the penalty, or some definite standard for fixing the amount, or else that the amount shall be determined in a judicial proceeding institutd against the offender. * * *."

In United States v. Grimaud (1911), 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563, the Court said: "From the beginning of the government various acts have been passed conferring upon executive officers power to make rules and regulations—not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress or measured by the injury done."

In State v. Atlantic Coast Line Railway Company (1911), 56 Fla. 617, 47 So. 969, 32 L. R. A. (N. S.) 639, the Court, in discussing the power of the Legislature to authorize the railroad commission to prescribe rules and regulations relating to the duties of railroad companies as to intrastate transportation, in its opinion, said: "Under the Constitution the legislature may confer upon the railroad commission judicial powers, but not exclusively or purely legislative powers. The power to prescribe penalties to be incurred for breaches of public duty appertains to the legislative department, to be exercised by the enactment of laws. It may not be proper for the legislature to delegate the power to make a law prescribing a penalty, but it is. competent for the legislature to

authorize the commission to prescribe duties upon which the law may operate in imposing a penalty and in effectuating the purpose designed in enacting the statute."

In the case of State v. Oliver Iron Mining Co. (1939), 207 Minn. 630, 292 N. W. 407, the Court held that the section of the Minnesota Income Tax Act, Laws 1933, Ch. 405, Sec. 32(c), which provided that: "If 90% of all the voting stock of two or more corporations is owned by or under the legally enforceable control of the same interests the Commission may impose the tax as though the combined entire taxable net income was that of one corporation * * *," gave the Tax Commission no discrtion, but required the imposition of the tax as a combined tax, notwithstanding the word "may"; and that if the Income Tax Act should be interpreted to authorize the Tax Commission in its discretion to impose a penalty without a legislative definition of the conditions which the Commission must find to exist before assessment of the penalty, it would be an unconstitutional delegation of legislative power. In its opinion in that case the Court said: "Without defining the conditions which the commission must find before it could impose a penalty the legislature could not, as the state claims, leave the imposition of the penalty to the discretion of the commission. There would be an unconstitutional delegation of legislative powers. Schechter Poultry Corp. v. United States, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947. There would also be a lack of uniformity which would violate our constitutional requirements (Art. 9, Sec. 1, Minnesota Constitution as well as the 14th Amendment to the Constitution of the United States, U.S.C.A.) if discrimination resulted."

In the case of Tite v. State Tax Commission (1936), 89 Utah 404, 57 P. 2d 734, the Court held that the Legislature might properly grant to the State Tax Commission power to determine whether a law imposing an excise or stamp tax upon the sale of cigarettes had been

violated, as part of the administrative procedure in determining whether a penalty for violation attached, and such power might be properly exercised by the commission (Rev. St. 1933, 80-13-54 and 93 1-4, 93 1-5, as amended by Laws 1933, 2d Sp. Sess., c. 17). But the court also held that the Legislature could not validly delegate to the Tax Commission authority to fix the amount of the penalty to be imposed upon the failure to affix the stamps at any amount from $10 to $299, as provided by the statute, since the determination of the amount of such penalty was a legislative function which could not be delegated to an administrative body (Rev. St. 133, 80-13-54 and 93, 1-4, 93 1-5, as amended by Laws 1933, 2nd Sp. Sess., c. 17)

In its opinion in that case the Court said:

"In this case, the Legislature gave the tax commission not only power to hear and determine whether a penalty should attach, but within the limits of from $10 to $299 to fix the penalty. The commission fixed it at $250. This involved not only the function of determining whether a situation was such as would work an imposition of the penalty fixed or ascertainable by law and the function of imposing such penalty, but the function and power of determining the amount of the penalty. This involves not the question of whether the Legislature gave the tax commission a judicial rather than an administrative power (unless we accept the plaintiffs' contention that this power to determine the amount of the penalty is really fixing punishment for a crime), but the question of whether the Legislature could delegate such power to determine the amount, in its discretion, to any tribunal as a matter of penalty imposed not as punishment for a crime but as a sanction to pay the tax. We think it could not do so. Giving to the tax commission the power

to determine in its own judgment the amount of the penalty was a legislative function which could not be delegated. It is not the power to enforce or apply a law, but the power to make a law for each particular case, to determine in its judgment the amount of a penalty. We recognize the power to make reasonable rules and regulations and to make a failure to obey them involve a loss of rights either given by law or by the regulations themselves. But in this case there was no basis provided for the commission to ascertain the amount of the penalty by a mathematical computation, but the broad power to determine its amount within its discretion, from $10 up to $299.''

In most of the cases which we have cited and other cases which we have examined, where the question has been discussed, the Legislature has prescribed the penalties for delinquencies in the payment of taxes, or for other neglect or refusal to perform duties under tax laws, stating the conditions under which such penalties may be imposed; and the courts have sustained the action of the administrative officers in imposing the penalties prescribed by the Legislature. We have found but few instances where the Legislature has attempted to delegate to an administrative officer or agency authority within broad limits to impose such penalties as he may see fit to impose with no definite standard for fixing the amount. And we have found no case in which the Court has upheld such delegation of authority to an administrative officer or agency.

 There is only one recognized exception to the principle laid down in the cases which we have cited, that the power conferred upon the Legislature to make laws cannot be delegated to any other body or authority, and that is the exception relating to the delegation by the general lawmaking body of extensive lawmaking powers with reference to local matters to municipalities,

or other subordinate local governmental authorities, for the purpose of local self-government. It is well-settled that the delegation by a state legislature to a municipal corporation of the power to legislate, subject to the paramount law, concerning local affairs, does not violate the inhibition against the delegation of the legislative function. See Annotation: 79 L. Ed. 491, 492, and cases cited. See also Cooley's Constitutional Limitations, Eighth Ed. Vol. 1, Ch. 5, p. 235, and Willoughby on the Constitution of the United States, Vol. 3, 2nd Ed., 1636. As stated by the Supreme Court in Stoutenburgh v. Hennick (1889), 129 U. S. 141, 9 S. Ct. 256, 32 L. Ed. 637, ''It is a cardinal principle of our system of government that local affairs shall be managed by local authorities, and general affairs by the central authority, and hence, while the rule is also fundamental that the power to make laws cannot be delegated, the creation of municipalities exercising local self-government has never been held to trench upon that rule.''

But even in cases involving the delegation of lawmaking power to municipalities or other local governing bodies, the courts have held that authority which may be granted to a local governing body to fix penalties, even when a maximum limit is prescribed, is not unrestricted, since such bodies cannot be granted a roving commission to establish within broad limits such penalties as they see fit. In Commonwealth v. Diaz (1950), 326 Mass. 525, the Court said: ''The authority which may be granted to a local governing body to fix penalties, even when a maximum limit is prescribed, is not unrestricted. Such bodies cannot be granted a roving commission to establish within broad limits such penalties as they see fit. That is essentially a legislative power which cannot be delegated. The question is one of degree.''

In the case that we have here the Legislature, in Code Section 9220-24, gave the Commissioner not only

power to hear and determine whether a delinquency existed and a penalty should attach, but also the power, in his discretion, within broad limits, to fix the amount of the penalty and to determine in each case whether the conditions were such as to justify the imposition of a penalty in any amount. Yet the Legislature prescribed no rule of law and fixed no standard or guide by which the action of the Commissioner in fixing the amount of the penalty or in determining whether the delinquency was deserving of a penalty should be governed. The question which is therefore presented for our decision is whether the Legislature could delegate to the Commissioner such power without prescribing some rule of law or fixing some definite standard by which his action should be governed. We think that the Legislature could not delegate such uncontrolled and arbitrary power to the Commissioner; and that the attempt to do was violative of Section 33 of the State Constitution and the due process clauses of the State Constitution and the Fourteenth Amendment to the Federal Constitution.

Due process of law with respect to the imposition of penalties by an administrative officer, as we have seen above, requires that the Legislature shall prescribe the amount of the penalty or some definite standard for fixing the amount. The vice in the penal provision of Code Section 9220-24 lies in the fact that it neither prescribes the amount of the penalty nor a definite standard for fixing that amount. Nor does it define the conditions which the Commissioner must find to exist to justify the imposition of penalties in excess of the minimum amount allowed by the statute. The Commissioner, under the provisions of the statute as written, may impose a different penalty in each case, subject only to the condition that the penalty imposed shall not be less than 10 per cent and not more than 25 per cent of the unpaid installment; or he may in his discretion dispense with the imposition of a penalty entirely. Only the courts in im-

posing a fine as punishment for a crime can be vested with such discretionary power.

■■ The fact that Commissioner, or his deputy, in this case, with no statutory rule to guide him, was impartial in fixing the amounts of the penalties for delinquencies in the payment of the installments of taxes falling due on December 15, 1957, according to a classification of his own making, did not relieve the statute of the constitutional infirmity pointed out above. As stated by this Court in Clark v. State, 169 Miss. 369, 152 So. 820, "The validity of a law is to be decided by its terms and provisions, and not by the manner in which it might be administered, operated, or enforced."

We therefore hold that the penal provision of Code Section 9220-24 (Section 23 of Chapter 402, Laws of 1952), which we have quoted above, is violative of the above mentioned provisions of the State and Federal constitutions, and that the judgment of the lower court sustaining the validity of the order of the Commissioner imposing on the appellant a 25 per cent penalty for delinquency in the payment of the tax must be reversed and judgment rendered in favor of the appellant.

It should be clearly understood, however, that our decision on the constitutional question presented in this case relates only to the penalty provision of Code Section 9220-24, supra, and the judgment rendered by us in this case shall be confined in its operation to the penalty provision of said Section 9220-24. That provision of said section is separable from all other parts of the Income Tax Law of 1952; and the judgment rendered herein shall not be deemed to affect or impair in any manner the validity of the remaining provisions of said Section 9220-24 or any other section or part of said Chapter 402, Laws of 1952.

In view of what we have stated above, it is not necessary that we consider the appellant's fourth and fifth assignments of error mentioned above. As to the ap-

pellant's sixth assignment of error mentioned above, the appellant did not ask in his bill of complaint that the interest charge of 12 per cent referred to be adjudged excessive; and the interest charge was not mentioned during the hearing before the chancellor. But from our own examination of the statute it appears that the appellant at the time the bill of complaint was filed was liable for interest at the rate of one-half of one per cent per month from the due date of the delinquent installment. It also appears from the record that the appellant tendered with his bill of complaint checks for the tax and the interest, and that the checks were placed in the hands of the clerk of the lower court for safekeeping until the controverted issues presented by the pleadings were decided, and that the amount of the tax actually due had not been paid to the Commissioner at the time the appeal to this Court was granted with supersedeas.

The decree of the lower court will therefore be reversed and judgment rendered here in favor of the appellant on the issue of liability for the penalty assessed against him, and the cause will be remanded to the lower court, with instructions to enter a decree directing the Commissioner to accept the tendered sum of $3,888.29, with interest thereon at the rate of one half of one per cent per month from the date of maturity of the unpaid installment of the tax to the date of the filing of the bill of complaint, in satisfaction of the fourth installment of the appellant's 1956 income tax, as shown on the income tax return filed with the Commissioner.

Reversed and judgment rendered by this court in favor of the appellant on the issue of liability for penalty, and cause remanded.

All Judges concur.